The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Margaret Morgan and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award:
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. On the official date of Decedent Janet Hauser's death, December 5, 1995, Advanced Plastiform, Inc. (hereinafter "API"), was a qualified self-insured with Riscorp of N.C., Inc. being the administrator.
2. As of the date of death, the employer-employee relationship existed between the parties.
3. As of the date of death, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At the time of Decedent's death, Gregory L. Hauser was married to and residing with Decedent-Employee, Janet Hauser.
5. At the time of Decedent's death, Gregory L. Hauser was the sole dependent of Janet Hauser.
6. Dependent, Gregory L. Hauser, expended sums greater than $2,000.00 for the burial of his wife, Janet Hauser.
7. The applicable average weekly wage within the meaning of G.S. 97-2(5) is $403.85 and the resulting weekly compensation rate is $269.23.
8. Janet Hauser was hired by API on January 21, 1995 and was employed there until her death on December 5, 1995.
9. As of the date of her death and for some months prior thereto, Janet Hauser was the office manager for API. Her duties as office manager included a variety of non-production tasks, including answering the telephone, bookkeeping, and other clerical duties, as well as acting as a liaison between production personnel and the owners of API, Stephen and Deborah Judd (hereinafter "the Judds"). As the office manager, Janet Hauser was involved with matters concerning employee morale. Additionally, Janet Hauser handled matters dealing with workers' compensation and unemployment benefits for API.
10. On or about Friday, December 1, 1995, API made a decision to lay off several production personnel, one of whom was Leroy Mann. Mann had been an employee of API since December 5, 1994. There were plans to possibly reinstate the production personnel who had been laid off, including Leroy Mann, after the beginning of 1996.
11. Late in the afternoon of Sunday, December 3, 1995, Albert Tripp, who was authorized by the Judds and API to notify production employees of the layoff, called Leroy Mann at home and notified him of the layoff. Leroy Mann became very upset, more so than other employees who had previously been laid off. As a result, Tripp feared an altercation with Mann, yet referred Mann to call Janet Hauser, the office manager for API, on the morning of December 4, 1995 for further information regarding his unemployment benefits.
12. On the morning of December 4, 1995, Janet Hauser was called by Leroy Mann regarding the layoff and his unemployment benefits. Prior to this time, Janet Hauser, under the supervision of Deborah Judd, a co-owner of API, had typed an informational sheet regarding unemployment benefits, but Mann had not received a copy of the same.
13. When Mann called Hauser on the morning of December 4, 1995, a meeting was arranged between Janet Hauser and Leroy Mann whereby Janet Hauser would travel to meet with Mann at the Fresh Market to discuss the layoffs, as well as to provide him with a copy of the unemployment informational sheet prepared by API. Leroy Mann oftentimes did not have an automobile available to him, and this fact was known to Janet Hauser.
14. Although Janet Hauser's job duties did not normally take her away from the work premises of API, on the occasion in question she was performing a function of her duties as office manager to counsel laid-off employees regarding unemployment benefits as well as promoting goodwill between API and the employees who had been laid off.
15. Janet Hauser kept the December 4, 1995 appointment with Leroy Mann, who kidnapped, assaulted, robbed and murdered her. Her body was found on Tuesday, December 5, 1995, near Falls Lake Bridge. She had been shot in the chest.
16. The most probable motive for Leroy Mann kidnapping, assaulting and battering, robbing, and murdering Janet Hauser was revenge for retaliation for his layoff at API of which he had been notified less than 24 hours previously.
17. Albert Tripp, who was clearly authorized by the Judds to deal with matters involving production layoffs and unemployment benefits, delegated part of that responsibility to Janet Hauser, the office manager for API. This delegation was specific to the needs of Leroy Mann for follow-up information from API regarding the layoffs and his unemployment benefits.
18. The function that Janet Hauser was serving for API while meeting Leroy Mann on December 4, 1995 was of appreciable benefit to API.
19. The Judds never specifically prohibited Janet Hauser from meeting with Leroy Mann on December 4, 1995. The Judds did not know that Mann had called Janet Hauser or that Janet Hauser was meeting him nor were they physically present at the time that Janet Hauser left to meet with Leroy Mann.
20. Contemporaneous with leaving to meet Leroy Mann, Janet Hauser informed a person who answered the phone for API at lunch, Donna Timm, of her [Hauser's] intended destination of meeting with Leroy Mann and the fact that she was carrying Mann a piece of paper, which by the overwhelming evidence referred to the employee informational sheet regarding unemployment benefits previously typed by Janet Hauser and approved by Deborah Judd.
21. This information, that Janet Hauser was carrying a work related paper to Leroy Mann on December 4, 1995, was known or reasonably should have been known to the Judds, the owners of API, but in response to discovery, the Judds, on behalf of API, failed to disclose this information to the plaintiff. This information was material to one of the most important issues involved in this case, i.e., the work-related nexus of Janet Hauser's trip to meet with Leroy Mann. Failure to disclose this information regarding such a material fact, explained by Ms. Judd as being because Ms. Timm did not actually "see" the document, demonstrates bad faith on the part of the Judds and API as well as an unfounded stubborn, litigiousness in defense of this case. On the other hand, defense counsel were unaware of this information until hearing when the testimony of Ms. Timm was taken by telephone.
22. As a result of the Judds' failure to fully respond to discovery, including request for admissions, the plaintiff was forced to prove and did, in fact, prove the existence of the evidence suppressed by the Judds, which was material to this case, i.e., the work-related nexus of Janet Hauser's trip.
23. Given the complexity of the case and the issues involved, an award of 25% of the benefits recovered on behalf of Gregory Hauser is not unreasonable and, in fact, is reasonable and commensurate with the risk and time involved in handling a matter of this nature.
 ***********
Based upon the findings of fact, The Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The death of Decedent Janet Hauser arose out of and in the course of her employment with API. N.C. Gen. Stat. § 97-2(6).
2. Gregory Hauser, as the sole dependent of Janet Hauser, is entitled to receive all benefits under the Workers' Compensation Act resulting from her death. N.C. Gen. Stat. § 97-39.
3. Plaintiff is hereby awarded 400 weeks of compensation at the weekly compensation rate of $269.23 to be paid weekly with the exception of that which has accrued since 5 December 1995 which shall be paid in a lump sum. N.C. Gen. Stat. § 97-38.
4. The conduct of the Judds and API in suppressing critical evidence on the issue of compensability of plaintiff s case caused this matter to be defended without reasonable grounds within the meaning of G.S. 97-88.1 and justifies independent sanctions for discovery abuse pursuant to I.C. Rule 802.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 APPEARANCES
1. The plaintiff is hereby awarded 400 weeks of compensation at the weekly compensation rate of $269.23 to be paid weekly with the exception of that which has accrued since December 5, 1995, which shall be paid in a lump sum.
2. Defendants shall reimburse Gregory Hauser for funeral expenses in the sum of $2,000.00.
3. Plaintiff's counsel, pursuant to a contract of employment, shall be paid 25% of the benefits awarded herein as attorney fees.
4. The attorney fees incurred by the plaintiff and the same sum awarded to plaintiff's counsel as attorney fees, i.e., 25% of the benefits awarded herein, are hereby taxed against the defendants as costs, to be paid directly to Gregory Hauser in reimbursement of the 25% attorney fees approved for plaintiff s counsel.
 S/ _______________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER
TJB/cnp/db